IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

KHALILAH JOHNSON,          *

    Plaintiff,             *

      v.              *        Civil Action No. RDB-14-4003

UNITED PARCEL SERVICE, INC.,   *
INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, and TEAMSTERS   *
LOCAL UNION NO. 355
                      *

    Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Khalilah Johnson ("Ms. Johnson" or "Plaintiff") brings this action against Defendants United Parcel Service, Inc. ("UPS"), International Brotherhood of Teamsters ("International Union"), and Teamsters Local Union No. 355 ("Local 355") (collectively, "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't, § 20-606, and various state law claims sounding in contract. Plaintiff claims that, as an employee of UPS, she suffered discrimination and retaliation by UPS and the Baltimore chapter of the International Brotherhood of Teamsters, Local 355.

Currently pending before this Court are Defendant International Union's Motion to Dismiss (ECF No. 8); Defendant Local 355's Motion to Dismiss (ECF No. 10); Defendant UPS's Motion to Dismiss (ECF No. 13); and Defendant UPS's Corrected Motion to Dismiss (ECF No. 14). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, Defendant International Union's

Motion to Dismiss (ECF No. 8) is GRANTED; Defendant Local 355's Motion to Dismiss (ECF No. 10) is GRANTED; Defendant UPS's Motion to Dismiss (ECF No. 13) is MOOT;[1] and Defendant UPS's Corrected Motion to Dismiss (ECF No. 14) is GRANTED IN PART and DENIED IN PART. Specifically, UPS's Motion to Dismiss is GRANTED as to Counts I-VI, and DENIED as to Count VII.

<u>BACKGROUND</u>

In a ruling on a motion to dismiss, this Court must accept the factual allegations in the plaintiff's complaint as true and construe those facts in the light most favorable to the plaintiffs. *See, e.g.*, *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

On May 28, 2008, Defendant UPS hired Plaintiff Khalilah Johnson, an African-American woman, as a part-time ("temp") driver. Amend. Compl. ¶¶ 67, 91, ECF No. 3. At some point thereafter, Ms. Johnson became a full-time driver. *Id.* ¶ 11. As an employee of UPS, Ms. Johnson also joined Defendant Local 355, the Baltimore chapter of Defendant International Union. *Id.* ¶¶ 9, 16. Like all members of Local 355, a collective bargaining agreement ("CBA") between UPS and Local 355 governed the terms of Ms. Johnson's employment. *Id.* ¶ 12. The CBA, which was effective from December 19, 2007 through July 31, 2013, covered, *inter alia*, "discrimination, seniority and grievance and arbitration procedures between the parties[.]" *Id.*

---

[1] As UPS explains, it realized immediately after filing its original Motion to Dismiss (ECF No. 13) that certain text was mistakenly omitted from the supporting memorandum. Mem. in Supp. of UPS's Reply, 1 n.1, ECF No. 29-1. UPS then filed the Corrected Motion to Dismiss (ECF No. 14) to rectify this error. Consequently, this Court will consider only UPS's Corrected Motion to Dismiss, and the original Motion to Dismiss is hereby MOOT.

The subject action arises from a series of alleged incidents of discrimination, harassment, and retaliation by Defendants.[2] *Id.* ¶¶ 18-24. Plaintiff claims that she was assigned difficult and overloaded driving routes, *id.* ¶¶ 42-44; denied pay raises appropriate for her seniority, *id.* ¶¶ 60-67; sent sexually explicit images, *id.* ¶ 95; sexually harassed by male colleagues, *id.* ¶¶ 92-94; and denied an accommodation for her religious beliefs as a Seventh Day Adventist Christian. *Id.* ¶¶ 104-108. Ms. Johnson also alleges that unknown coworkers placed bags of tampons and a bag of urine in her truck in an effort to harass and ridicule her. *Id.* ¶¶ 97, 100.

In response to this alleged harassment, Ms. Johnson claims that she has filed sixteen grievances since March of 2013, all of which remain unheard. *Id.* ¶ 135. During the course of filing the grievances, Ms. Johnson alleges that Local 355 representatives warned other employees to "be careful around [Plaintiff]," as "no one should get involved with Plaintiff, especially other Black females." *Id.* ¶¶ 127-128. Despite this alleged discrimination, Plaintiff asserts that she continued to perform her duties satisfactorily. *Id.* ¶ 17.

Ms. Johnson filed her first charge with the Equal Employment Opportunity Commission ("EEOC") on April 3, 2013 (the "2013 Charge"), alleging sex discrimination related to UPS's denial of a raise on March 25, 2013. Pl.'s Resp. in Opp. to Defs.' Mots. to Dismiss Ex. 3, 2, ECF No. 25-3. On February 7, 2014, Ms. Johnson filed a second charge with the EEOC (the "2014 Charge").[3] Pl.'s Resp. in Opp. to Defs.' Mots. to Dismiss Ex. 4,

---

[2] Although Plaintiff names International Union as a defendant, International Union is neither a party to the contract, *Samosky v. Teamsters Local 175*, 944 F. Supp. 2d 479, 514 (S.D. W. Va. 2013), nor does Plaintiff include any allegations specific to this defendant.

[3] Plaintiff presents a third charge, No. 531-2014-00847, as containing "additional discrimination claims." Amend. Compl. ¶ 4; *see also* Pl.'s Resp. in Opp. to Defs.' Mots. to Dismiss Ex. 5, ECF No. 26-5. This charge, for which the

ECF No. 25-4. The 2014 Charge levied failure to accommodate and retaliation claims related to Ms. Johnson's religious beliefs. *Id.* at 2. The EEOC issued "Right to Sue" Notices for both charges on June 25, 2014. Pl.'s Resp. in Opp. to Defs.' Mots. to Dismiss Exs. 3-4, ECF Nos. 25-3, 25-4.

Plaintiff filed the subject action on June 16, 2014 in the Circuit Court for Baltimore City. Compl., ECF No. 2. Three months later, she filed an Amended Complaint (ECF No. 3) in state court. Defendants jointly removed the case to this Court pursuant to 28 U.S.C. § 1331.[4] Notice of Removal, ECF No. 1. Defendants subsequently filed separate Motions to Dismiss (ECF Nos. 8, 10, 14), asking this Court to dismiss the Amended Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Motions are fully briefed and ripe for consideration.

<u>STANDARDS OF REVIEW</u>

**A.  Motion to Dismiss Under Rule 12(b)(1) of the Federal Rules of Civil Procedure**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not

---

EEOC issued "Right to Sue" notice on March 13, 2014, is an exact duplicate of the 2014 Charge. This Court will thus refer only to the two charges that present different claims of discrimination – the 2013 and 2014 Charges.

[4] To the extent that Ms. Johnson's Response in Opposition to Defendants' Motions to Dismiss (ECF No. 25) mounts an informal motion to remand, this motion is DENIED. This Court's jurisdiction is proper due to the federal questions raised by Plaintiff's claims. 28 U.S.C. § 1331.

true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted).  A plaintiff carries the burden of establishing subject matter jurisdiction.  *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

With respect to a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction."  *Davis*, 367 F. Supp. 2d at 799.  Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F3d at 192.  "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'"  *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted).  The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Sharafeldin v. Maryland Dept. of Public Safety & Correctional Services*, 94 F. Supp. 2d 680, 684-85 (D. Md. 2000).

**B.    Motion to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests

surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In the employment discrimination context, this pleading standard should not be "onerous." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764 (4th Cir. 2003). The Supreme Court has indicated that an employment discrimination plaintiff need not plead particular facts conclusively satisfying each element of a prima facie case. *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002).[5] *Swierkiewicz*, however, did not abrogate the requirement that the plaintiff allege "facts *sufficient* to state *all* the elements of her claim." *Bass*, 324 F.3d at 765 (emphasis added); *see Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (explaining that *Swierkiewicz* does not nullify the heightened pleading requirements of *Twombly* and *Iqbal*); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) ("[T]he Supreme Court's holding in *Swierkiewicz v. Sorema* did not alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each element of his claim." (internal citation omitted)).

Even with the degree of flexibility arguably given to employment discrimination plaintiffs, the court must consider whether plaintiff's complaint has met the plausibility requirement of *Twombly* and *Iqbal*. *See Miller v. Carolinas Healthcare System*, 561 F. App'x 239,

---

[5] Although the general 12(b)(6) standard used in *Swierkiewicz* was overruled by *Twombly*, *see Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009), the analysis cited here remains good law.  *Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 666 (D. Md. 2008) ("The *Twombly* Court made clear that its holding did not contradict the *Swierkiewicz* rule that 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a *prima facie* case of discrimination.'" (citations omitted)).

241 (4th Cir. 2014) (explaining that, in the Fourth Circuit, "*Swierkiewicz* left untouched the burden of a plaintiff to allege facts sufficient to state all elements of her claim." (internal quotation marks and citation omitted)). In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "At bottom, a plaintiff must nudge [its] claims across the line from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (internal quotation marks omitted).

<u>ANALYSIS</u>

Defendants filed separate motions to dismiss, yet their arguments for dismissal reflect common themes. Given this general unity of opinion, this Court will consider each Count of the subject Amended Complaint in turn, as applied to the relevant defendant.

**A. Count I – Breach of Contract (UPS)**

In Count I, Ms. Johnson alleges that UPS breached the collective bargaining agreement ("CBA") by "den[ying] Plaintiff opportunities for advancement and pay, and adversely affect[ing] the terms and conditions of her employment[.]" Amend. Compl. ¶ 26. Plaintiff further contends that UPS discriminated against her and "proscribed her right to due process," in violation of Article 36 of the CBA.[6] This state law contract claim, however, is preempted by Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

Section 301 of the Labor Management Relations Act provides:

---

[6] Although Plaintiff does not provide the full text of Article 36, she explains that this article, labeled "*Non-Discrimination*, mandates that both UPS and Local 355 agree to refrain from discriminating against employees with respect to hiring, compensation and terms and conditions of employment." Amend. Compl. ¶ 13 (emphasis in original).

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, with respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Through Section 301, the United States Congress established "a federal policy . . . that federal law be applied in addressing disputes arising out of labor contracts." *Clark v. Newport News Shipbuilding & Dry Dock Co.*, 937 F.2d 934, 937 (4th Cir. 1991) (citing *Allis-Chalmers v. Lueck*, 471 U.S. 202, 209 (1985) (internal citation omitted)). In an effort to ensure uniformity in that federal policy, the "pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *McCormick v. AT&T Technologies, Inc.*, 934 F.2d 531, 534 (4th Cir. 1991) (quoting *Franchise Tax Bd. V. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983)); *see also Ashe v. Giant of Maryland, LLC*, Civ. A. No. AW-06-1293, 2007 WL 7020451, *6-7 (D. Md. July 17, 2007) (dismissing the plaintiff's state law breach of contract claim due to preemption by Section 301).

To determine whether Section 301 preempts a state law claim, a court must consider if the "resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Clark*, 937 F.2d at 937 (quoting *Allis-Chalmers*, 471 U.S. at 202). If such interpretation is required, then the claim is preempted by federal law. *Clark*, 937 F.2d at 937; *see also Lingle v. Norge Div. of Magic Chef*, 486 U.S. 499, 412 (1988). When, however, the state law claim presents only "nonnegotiable rights conferred on individual employees as a matter of state law," then preemption is not

triggered. *Davis v. Bell Atlantic-West Virginia, Inc.*, 110 F.3d 245, 247 (4th Cir. 1997) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). Such an exception, however, is the rare instance where the dispute does not require the court to interpret the agreement between the parties. *Davis*, 110 F.3d at 247 (citing *Lingle*, 486 U.S. at 413). Moreover, a plaintiff may not evade the preemptive power of Section 301 through artful pleading. *See Davis*, 110 F.3d at 247 (citing *Allis-Chalmers*, 471 U.S. at 211).

In this case, Ms. Johnson's breach of contract claim is preempted by Section 301. A breach of contract claim, unlike separate, nonnegotiable rights, necessarily requires interpretation of the contract at issue. *Int'l Union, United Mine Workers of America v. Covenant Coal Corp.*, 977 F.2d 895, 899 (4th Cir. 1992). Plaintiff is asking this Court to consider UPS's alleged actions, such as its purported denial of "opportunities for advancement and pay" and infringement on "the terms and conditions of her employment," as evidence that such actions violated the terms of the CBA. Amend. Compl. ¶ 26. This claim is nothing if not an exercise in contract interpretation. Even the alleged discrimination is merely a ground upon which Ms. Johnson contends that UPS breached the CBA.[7] Any attempt to artfully plead otherwise does not defeat the preemptive force of Section 301.

Accordingly, where, as here, the state law claim is "inextricably intertwined with consideration of the terms of the labor contract," Section 301 preempts the state law claim.[8] *Davis*, 110 F.3d at 247. Count I is thus DISMISSED.

---

[7] Counts V-VII, in which Ms. Johnson alleges discrimination and retaliation in violation of state and federal law, further emphasize that the claim of discrimination in Count I is offered to support a breach of contract claim. Counts V-VII are examples of separate, nonnegotiable rights under federal and state law that do not require the interpretation of the underlying contract.

[8] Even if this Court considered Count I as a Section 301 claim, such claim would be untimely. A Section 301 claim must be filed within a six-month limitations period. *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 171-72

**B. Counts II-IV – Breach of Contract (International Union and Local 355)**

Counts II-IV present hybrid claims of breach of contract and breach of the duty of fair representation related to Articles 36, 48, and 7 of the CBA.[9] *See, e.g.,* Amend. Compl. ¶¶ 30, 51, 57, 77, 81. Specifically, Ms. Johnson alleges that International Union[10] and Local 355, in "entering into a collective bargaining agreement, stripped Plaintiff of the traditional form of seeking redress, and breached the collective bargaining agreement by acting in a discriminatory fashion, in bad faith and in an arbitrary and capricious manner so as to deprive Plaintiff of his [sic] rights under the agreement." *Id.* ¶ 49. Although unclear, it appears that Plaintiff further contends that the alleged breach of the duty of fair representation contributed to the breach of the CBA. *Id.* ¶ 53.

Once again, Ms. Johnson's claims are preempted by Section 301 of the Labor Management Relations Act. Counts II-IV, like Count I, are contract claims that require the interpretation of the CBA to determine whether the Union Defendants alleged actions violated the agreement. From the face of the Amended Complaint, the duty of fair

---

(1983); *see also Foy v. Gian Food Inc.,* 298 F.3d 284, 291 (4th Cir. 2002) (explaining that a "six-month statute of limitations applies to actions under [the LMRA] brought by an employee against his employer for breach of a collective bragining agreement."). The limitations period is triggered when the plaintiff discovers, or reasonably should have discovered, the alleged violations. *Bruce v. Int'l Longshoremen's Assoc.,* 715 F. Supp. 2d 609, 614 (D. Md. 1998), *aff'd* 182 F.3d 907 (4th Cir. 1999). Ms. Johnson filed this action in state court on June 16, 2014. Relevant violations must have occurred on or after December 16, 2013. None of the dates included in Count I, however, fall within this statutory period.

[9] Again, Plaintiff does not provide the full text of Article 48 or Article 7. Instead, she states that Article 48, "*Seniority,* mandates that seniority, as measured by length of continuous service, shall prevail at all times." Amend. Compl. ¶ 14 (emphasis in original). Article 7, "*Grievance & Arbitration Procedure,* governs disputes concerning the application or interpretation of the Agreement." *Id.* ¶ 15 (emphasis in original).

[10] Although Plaintiff names both International Union and Local 355 in Counts II-IV, she omits any allegations specific to International Union. International Union is not a party to the CBA. Mem. in Supp. of International Union's Motion to Dismiss, 5, ECF No. 8-1. As International Union is not a party to the CBA, it cannot breach the agreement, nor does it owe a duty of fair representation to Ms. Johnson. *See Samosky,* 944 F. Supp. 2d at 514 (explaining that the "mere fact of affiliation does not render the International liable for the acts of the Local." (quoting *Taylor v. Roadway Express,* No. 85-2309-MA, 1986 WL 1250412, *6 (W.D. Tenn. Aug. 19, 1986))). Counts II-IV are thus DISMISSED against International Union.

representation is included merely as a ground upon which Plaintiff argues that a breach of the CBA occurred. To resolve the claim, this Court must consider, for example, whether Local 355's alleged refusal to pursue her grievances violated the terms of the contract. Amend. Compl. ¶ 50. Such an inquiry necessitates the interpretation of the CBA, as a breach of contract claim may not be resolved without considering the contract. As in Count I, Counts II-IV are DISMISSED due to the preemptive force of Section 301.[11]

## C. Count V – Race and Gender Discrimination under Title VII and Maryland Fair Employment Practices Act (All Defendants)

In Count V, Ms. Johnson contends that Defendants discriminated against her on the basis of her race and gender, in violation of Title VII of the Civil Rights of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't, § 20-606.[12] Among other incidents, Plaintiff claims that she was denied a raise, assigned to less desirable driving routes, shown sexual images, and subjected to "texting, stalking and humiliating acts" due to her gender. Although Ms. Johnson never identifies the precise nature of her claim, she appears to allege a claim of sex-based disparate treatment.

---

[11] Were this Court to consider Counts II-IV as hybrid Section 301-duty of fair representation claims, any such claims are untimely. As in Count I, a Section 301-duty of fair representation claim must be filed within a six-month limitations period. *DelCostello*, 462 U.S. at 170-71. The limitations period is triggered when the plaintiff discovers, or reasonably should have discovered, the alleged violations. *Bruce*, 715 F. Supp. 2d at 614. Ms. Johnson filed this action in state court on June 16, 2014. Relevant violations must have occurred on or after December 16, 2013. Any dates included in Counts II-IV, and relevant to Plaintiff's claims in the subject Counts, however, are not within the requisite limitations period.

[12] Title VII and FEPA are analyzed as one because "[t]he Maryland Court of Appeals has deemed FEPA to be the state law analogue of Title VII, and has noted that Maryland courts 'traditionally seek guidance from federal cases in interpreting Maryland's [FEPA]." *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC*, No. JKB-10-276, 2011 WL 4549177, at *4 n.3 (D. Md. Sept. 28, 2011) (internal citation omitted). The parties agree that federal law applies to Plaintiff's FEPA claims in Counts V-VII. *See generally* Mem. in Supp. of International Union's Mot. to Dismiss, at 10-11; Mem. in Supp. of Local 355's Mot. to Dismiss, 9-11, ECF No. 10-1; Mem. in Supp. of UPS's Corrected Mot. to Dismiss, 16-47, ECF No. 14-1; Mem. in Supp. of Pl.'s Resp. in Opp. to. Defs.' Mots. to Dismiss, 20-25, ECF No. 25-2.

A plaintiff in a federal employment discrimination action must overcome two hurdles to survive a motion to dismiss. First, the plaintiff must exhaust administrative remedies by filing administrative charges with the EEOC or an authorized state agency. *Johnson v. State of Maryland*, 940 F. Supp. 873, 875 (D. Md. 1996) (citing 42 U.S.C. § 2000e-5(e)-(f); *Mickel v. S.C. State Employment Serv.*, 377 F.2d 239, 242 (4th Cir. 1967); *Maxey v. M.H.M., Inc.*, 828 F. Supp. 376, 377 (D. Md. 1993)). The exhaustion requirement ensures that the charged party receives notice of the claims it faces. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). A subsequent lawsuit thus must limit its claims to those included in the administrative charge, unless the non-exhausted claim is "reasonably related" to the claims described in the administrative charge. *Evans v. Technologies Applications & Servs. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996).

Title VII establishes two potential limitations periods within which a charge of discrimination must be filed with the EEOC. *Edelman v. Lynchburg Coll.*, 228 F.3d 503, 506 (4th Cir. 2000). The general limitations period is 180 days after the alleged unlawful employment practice. *Id.* If, however, state law proscribes the alleged employment practice and the charge is first filed with a state deferral agency, then the limitations period is extended to 300 days. *Id.*; *see also Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998). Maryland is a "deferral state" in which the 300-day limitations period applies. *See, e.g.*, *Prelich v. Medical Resources, Inc.*, 813 F. Supp. 2d 654, 661-62 (D. Md. 2001). Accordingly, a plaintiff in Maryland has 300 days to file a charge with the EEOC. Moreover, "[t]imeliness requirements for an action alleging employment discrimination are to be strictly enforced." *Tangires v. Johns Hopkins Hosp.*, 79 F. Supp. 2d 587, 597 (D. Md. 2000).

Second, a disparate treatment plaintiff, like all employment discrimination plaintiffs, must plead facts "sufficient to state all the elements of her claim." *Bass*, 324 F.3d at 765. Under Title VII of the Civil Rights Act, an employer may not "fail or refuse to hire or to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). In the disparate treatment context, if a plaintiff does not have "direct evidence" of discrimination, she must show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *see also White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004).

In this case, Ms. Johnson filed two charges with the Equal Employment Opportunity Commission ("EEOC") – the first charge on April 3, 2013 ("2013 Charge") and the second on February 7, 2014 ("2014 Charge").[13] Pl.'s Resp. in Opp. to Defs.' Mots. to Dismiss Exs. 3-4. The EEOC issued "Right to Sue" Notices for both charges on June 25, 2014. *Id.* The 2013 Charge alleges only sex discrimination by UPS,[14] referring to one incident on March 25, 2013 in which Plaintiff claims she was denied a raise due to her gender. Pl.'s Resp. in Opp. to Defs.' Mots. to Dismiss Ex. 3, at 2. The 2014 Charge purports to raise claims of race and religious discrimination and retaliation by UPS and Local 355, but includes allegations only of religious discrimination and retaliation.

---

[13] As previously noted, the third charge offered by Plaintiff is an exact duplicate of the 2014 Charge. This Court will thus consider only the 2013 and 2014 Charges.

[14] The 2013 Charge names neither International Union nor Local 355 as offending parties. Pl.'s Resp. in Opp. to Defs.' Mots. to Dismiss, at 2.

a.  **UPS**

In moving to dismiss Count V, UPS argues that Ms. Johnson failed to exhaust administrative procedures for her claims of gender and race discrimination. Even if some claims are properly exhausted, UPS contends that she has failed to state a claim for which relief may be granted. This Court will examine each argument in turn.

As administrative exhaustion is a prerequisite to any federal employment discrimination action, this Court will first consider whether Ms. Johnson properly exhausted her claims of race and gender discrimination. Neither the 2013 Charge nor the 2014 Charge includes any allegations of discrimination due to race. Although Ms. Johnson alleges that she is a "Black female" in the subject Amended Complaint, she omits any such facts from her administrative charges. Merely checking the race "box" in the 2014 Charge does not suffice, as Plaintiff's description of the alleged discrimination refers only to religious discrimination and retaliation. Due to Ms. Johnson's failure to exhaust her race claim, UPS received no notice of any race discrimination allegations when it received the 2014 Charge.

Ms. Johnson did satisfy the administrative exhaustion prerequisite for her claim of sex discrimination, but only regarding the alleged incident on March 25, 2013.[15] Count V and the incorporated preceding allegations, however, list several alleged acts of sex discrimination that are unrelated to UPS's purported denial of a raise on March 25, 2013. Although a plaintiff may add some unexhausted claims to her subsequent lawsuit, the claims must, at the very least, be "reasonably related" to the properly exhausted claims. *See Chacko*, 429 F.3d at

---

[15] Admittedly, Ms. Johnson did not include the March 25, 2013 incident in Count V. This Count, however, incorporates all preceding paragraphs, and allegations referring to the March 25, 2013 incident are found in Count III. Amend. Compl. ¶¶ 65-68.

506; *Evans*, 80 F.3d at 963. Alleged acts of harassing "texting, stalking, and humiliating acts (graphic pictures and comments)," or the discovery of tampons in her truck in November 2013, bear no reasonable relationship to the March 25, 2013 raise denial. *See* Amend. Compl. ¶¶ 93, 97. The March 25, 2013 incident thus remains the only properly exhausted claim of sex discrimination.

Despite this satisfaction of the administrative exhaustion prerequisite, Ms. Johnson's claim of sex discrimination fails to state a claim for which relief may be granted. She does not offer direct evidence of discrimination, thus she must allege facts sufficient to show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d at 190. Plaintiff does provide sufficient facts to make the first, third, and fourth elements of her disparate treatment claim plausible. First, as a female, she is a member of a protected class. Regarding the third element, the only specific incident alleged – the March 25, 2013 denial of a raise – does constitute an "adverse employment action" within the meaning of Title VII. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375-76 (4th Cir. 2004) (explaining that an "adverse employment action" is a "a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment"); *see also Mallik v. Sebelius*, 964 F. Supp. 2d 531, 542-43 (D. Md. 2013) (holding that an "adverse employment action" does not require termination). Further, her description of the "two male drivers" with allegedly later seniority dates are sufficient to satisfy the fourth element at this preliminary stage. For purposes of a motion to dismiss,

Plaintiff need not *prove* that the male drivers are similarly situated, as long as she pleads facts sufficient to state the element at issue. *See Bass*, 324 F.3d at 765.

Plaintiff's claim fails, however, under the second element, as she does not allege any facts showing that she performed her job satisfactorily. Although she alleges that, "[d]uring all relevant times of the Complaint, Plaintiff performed her duties in a satisfactory manner," such conclusory statements do not permit the plaintiff's claim to "rise above speculation." *Coleman*, 626 F.3d at 191. Absent any such facts, Plaintiff cannot satisfy the second element, even at the pleading stage. Although a plaintiff need not prove each element conclusively in the complaint, she must meet the plausibility standard of *Iqbal*.

In sum, Plaintiff's claims of race and gender discrimination may not proceed. Ms. Johnson failed to exhaust the requisite administrative procedures for any alleged race discrimination and all sex discrimination unrelated to the March 25, 2013 incident. The March 25, 2013 sex discrimination claim, while properly exhausted, does not state a claim for which relief may be granted. Count V is thus DISMISSED as to UPS.

### b. International Union

Count V must be dismissed against Defendant International Union, as Ms. Johnson failed to exhaust administrave remedies. A Title VII action "may be brought only against the respondent named *in the charge*." *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998) (quoting 42 U.S.C. § 2000e-5(f)(1)) (emphasis added); *see also Talbot v. U.S. Foodservice, Inc.*, 204 F. Supp. 2d 881, 883 (D. Md. 2002). Neither the 2013 Charge nor the 2014 Charge names International Union as a discriminating party, thus it had no notice of any charges levied by Ms. Johnson. As International Union is not even a party to the CBA, its inclusion as a

defendant in the present action thus is not "reasonably related" to any claims levied in the 2013 and 2014 Charges. Accordingly, Count V is DISMISSED as to International Union.

### c.  Local 355

Plaintiff has also failed to satisfy the administrative exhaustion prerequisite as to Defendant Local 355, thereby requiring the dismissal of her claims in Count V. Local 355 is named as an offending party solely in the 2014 Charge. Any allegations of sex discrimination raised by the 2013 Charge are thus not exhausted as to Local 355. *See Causey*, 162 F.3d at 800. The 2014 Charge, in which Local 355 is named, purports to levy a claim of race discrimination. As discussed with regards to Defendant UPS, the 2014 Charge includes no facts, allegations, or even conclusory statements related to race. Failing to satisfy this exhaustion prerequisite precludes Ms. Johnson from raising a claim of race discrimination in the subject action. Count V is thus DISMISSED as to Local 355.

### D.  Count VI – Religious Discrimination under Title VII and Maryland Fair Employment Practices Act (All Defendants)

In Count VI, Plaintiff claims that Defendants failed to provide her with requested religious accommodations, in violation of Title VII and FEPA. Ms. Johnson, a Seventh Day Adventist Christian, alleges that she requested an accommodation in May 2013 that would permit "absence from work before sundown on Fridays, which is the start of her Sabbath." Amend. Compl. ¶¶ 104-105. On some later date, UPS allegedly granted Ms. Johnson's request for the period running from the end of October up to, but not including, the first of

April. *Id.* ¶ 108. UPS then denied the accommodation for the period of April 1 through October.[16] *Id.*

Like claims of sex and race discrimination under Title VII, a plaintiff raising a failure to accommodate claim under Title VII must fulfill the administrative exhaustion prerequisite. A plaintiff then must plead facts sufficient to state, not to prove conclusively, all elements of a religious accommodation claim: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Chalmers v. Tulon Co. of Richmond*, 1010 F.3d 1012, 1019 (4th Cir. 1996) (quoting *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985)); *see also Booth v. State of Maryland*, 337 F. App'x 301, 308-309 (4th Cir. 2009). The reasonableness of the accommodation, if indeed feasible and provided, is a question reserved for a later stage. *See Philbrook*, 757 F.2d at 481; *see also Williams v. Harvey*, Civ. A. No. 4:05CV161, 2006 WL 2456406, *11 (E.D. Va. Aug. 21, 2006).

### a. UPS

In this case, only the 2014 Charge presents allegations of failure to accommodate Ms. Johnson's religious beliefs. The 2014 Charge, which names UPS as an offending party, mirrors Plaintiff's allegations in the Amended Complaint. *Compare* Pl.'s Resp. in Opp. to Defs.' Mots. to Dismiss Ex. 4, at 2, *with* Amend. Compl. ¶¶ 104-108. While Plaintiff does not provide the specific date on which UPS granted in part and denied in part her request, the

---

[16] As described above, Ms. Johnson's supervisors allegedly informed her that, for the period for which the reigious accommodation was denied, she could apply her leave to her religion-related absences. *Id.* ¶ 108. When Plaintiff had exhausted her leave, UPS allegedly would not compensate her for any further absences. *Id.*

decision occurred at some point after her May 2013 request. Ms. Johnson filed the 2014 Charge on February 7, 2014, within the applicable 300-day limitations period. Ms. Johnson thus has cleared the administrative exhaustion hurdle of a Title VII claim.

Yet, Plaintiff's failure to accommodate claim founders at the second hurdle, as she does not state a claim for which relief may be granted. She does provide sufficient facts to make the first and second elements plausible. First, this Court does not question Ms. Johnson's *bona fide* religious beliefs as a Seventh Day Adventist Christian. Moreoever, the observation of her Sabbath on Saturday plausibly conflicts with her shift requirements. Second, Ms. Johnson states that she informed UPS of her religious beliefs when requesting the accommodation at issue.

Plaintiff's claim fails, however, under the final element. To defeat a motion to dismiss, Ms. Johnson must plead sufficient facts that she was "disciplined for failure to comply with the conflicting employment requirement." *Chalmers*, 1010 F.3d at 1019 (quoting *Philbrook*, 757 F.2d at 481). Ms. Johnson alleges that she requested a specific religious accommodation, which was granted in part and denied in part. She does not, however, allege that she failed to comply with an employment requirement due to her religious beliefs. Rather, she merely states that her duties may conflict with the observation of her Sabbath. Further, she presents no facts indicating that she was disciplined for any alleged failure to comply. Ms. Johnson claims that, after making her request for accommodation, she was assigned to longer, more burdensome driving routes. This alleged re-assignment may qualify as an "adverse employment action" within the meaning of Title VII, *James*, 368 F.3d at 375- 76, but it is not causally linked to any plausible failure to comply with employment

requirements.[17] Indeed, Plaintiff claims she performed her duties satisfactorily throughout her employment. Ms. Johnson thus has failed to plead any facts to satisfy the third element of a failure to accommodate claim. Given this deficiency, Count VI fails to state a claim for which relief may be granted and is DISMISSED as to UPS.

### b.  International Union

As in Count V, Count VI must be dismissed against Defendant International Union for failure to exhaust administrave remedies. International Union is not named in either EEOC charge, nor is it even referenced in the allegations. Consequently, it had no notice of any potential liability stemming from Ms. Johnson's claims. Count VI is thus DISMISSED as to International Union.

### c.  Local 355

Although Local 355 is named as a party to the 2014 Charge, Plaintiff does not present any facts specific to Local 355. Each fact provided to support her failure to accommodate claim is an alleged action or inaction by UPS, not by Local 355. Local 355 thus had notice of the charges pending against UPS, but no notice of how its own conduct contributed to Ms. Johnson's claim. Yet, even if this Court assumed that Plaintiff had fulfilled the administrative exhaustion prerequisite as to Local 355, her claim fails to state a claim for which relief may be granted. Plaintiff simly alleges no facts, in the Amended Complaint or the 2014 Charge, linking Local 355 to this claim. Count VI is thereby DISMISSED as to Local 355.

### E.  Count VII – Retaliation under Title VII and Maryland Fair Employment Practices Act (All Defendants)

---

[17] As will be discussed in Count VII, such an adverse employment action is properly considered as relevant to a retaliation claim.

In Count VII, Plaintiff claims that Defendants retaliated against her in violation of Title VII and FEPA. Essentially, Ms. Johnson alleges that Defendants "targeted [her] because of her complaints concerning breaches of the terms and conditions of her employment" and her race, gender, and religion. Amend. Compl. ¶ 110. Among other alleged acts of retaliation, Ms. Johnson claims that UPS assigned her to "overloaded" and burdensome routes and advised other employees to avoid her, while Local 355 has failed to pursue sixteen grievances filed by her. *Id.* ¶¶ 106, 112, 120, 135.

Under Title VII, an employer may not discriminate against an employee who "has opposed any . . . unlawful employment practice" covered by the statute. 42 U.S.C. § 2000e-3(a). To state a claim of retaliation under Title VII, a plaintiff first must exhaust administrative remedies. After satisfying this prerequisite, the plaintiff must show that "(1) she engaged in protected activity: (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)). A plaintiff may not conclusorily assert the existence of a "causal connection." The presence of a "close" temporal relationship between the protected activity and the alleged adverse action, however, can be sufficient to establish a causal connection at the pleading stage. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that alleged "temporal proximity" must be "very close" to satisfy this third element). If the employer did not know of the protected activity, then even temporal proximity cannot save a plaintiff's claim. *See Price v. Thompson*, 380 F.3d 209, 213 (4th Cir.

2004) (explaining that the employer must know the employee engaged in protected activity as a prerequisite to establishing a causal connection).

### a. UPS

Once again, only the 2014 Charge raises a claim of retaliation under Title VII. Specifically, Ms. Johnson claims that the retaliation stems from her request for a religious accommodation. Pl.'s Resp. in Opp. to Defs.' Mots. to Dismiss Ex. 4, at 2-3. This retaliation took the form of assignment to less desirable and more burdensome routes.[18] *Id.* Other incidents raised in Count VII, however, such as the presence of bags of tampon and urine in her truck, are unrelated to her request for religious accommodation. In fact, Ms. Johnson argues that such retaliation, and other alleged instances of harassment, occurred in response to her complaints of gender discrimination. She has thus exhausted administrative remedies solely for the religious accommodation-related retaliation raised in the 2014 Charge, and not for any unrelated retaliation. *Evans*, 80 F.3d at 963.

This Court will thus evaluate the sufficiency of Count VII solely with regards to the religious accommodation-related retaliation. Viewing the alleged facts in the light most favorable to Ms. Johnson, she has sufficiently plead a claim of retaliation. First, Ms. Johnson engaged in protected activity by requesting an accommodation for her religious beliefs in May 2013. Second, she alleges that her employer, UPS, acted adversely against her by reassigning her to longer, heavier routes. Third, Plaintiff sufficiently plead a causal link between the reassignment and her accommodation request. Although Ms. Johnson does not

---

[18] Ms. Johnson refers to the more burdensome routes in Count VII, but does not explicitly discuss her request for a religious accommodation. Yet, she incorporates all preceding allegations in Count VII, including those facts related to the accommodation request of Count VI. This Court may thus consider such allegations in examining whether this Count will survive Defendants' respective Motions to Dismiss.

provide an exact date on which this reassignment occurred, an employment discrimination plaintiff need not conclusively prove each element of her claim at the motion to dismiss stage. *Bass*, 324 F.3d at 765. Instead, Ms. Johnson demonstrates close temporal proximity by alleging that she requested her accommodation in May 2013, and the reassignment soon followed. As the Supreme Court explained in *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70-71 (2006), assignment of an employee to "less desirable . . . [and] more arduous duties" is "one good way to discourage [that] employee from bringing discrimination charges[.]" Ms. Johnson's reassignment thus plausibly had a chilling effect on her willingness to pursue her claims of discrimination. This causal link is sufficient to survive a motion to dismiss.

In sum, Ms. Johnson exhausted only her claim of retaliation related to her request for a religious accommodation. Any other claims of retaliation are unrelated and thus unexhausted. Not only did Ms. Johnson properly exhaust her claim of religious accommodation-related retaliation, but she also alleged facts sufficient to state all elements of the claim. Accordingly, UPS's Motion to Dismiss Count VII is DENIED.

### b. International Union

Like Counts V and VI, Count VII must be dismissed against Defendant International Union for failure to exhaust administrave remedies. Neither the 2013 Charge nor the 2014 Charge names International Union as a discriminating party, either formally as a defendant, or by reference in the descriptions of the alleged violations. For the foregoing reasons, Count VII is DISMISSED as to International Union.

### c. Local 355

Count VII, as applied to Local 355, faces the same deficiencies as Count VI. As previously discussed, Local 355 is named as a party to the 2014 Charge, but Ms. Johnson does not make any allegations of religious accommodation-related retaliatory conduct by Local 355. Plaintiff's claims of retaliation pertain to actions by UPS, not Local 355. Apart from the inclusion of Local 355 as a party, the 2014 Charge simply omits any reference to this defendant. Defendant thus had notice of the charges pending against UPS, but no notice of how its own conduct contributed to Ms. Johnson's claim. Given this failure to exhaust her claim of retaliation against Local 355, this Court lacks subject matter jurisdiction over Count VII as to this defendant. Accordingly, Count VII is DISMISSED against Local 355.

CONCLUSION

For the reasons stated above, Defendant International Union's Motion to Dismiss (ECF No. 8) is GRANTED; Defendant Local 355's Motion to Dismiss (ECF No. 10) is GRANTED; Defendant UPS's Motion to Dismiss (ECF No. 13) is MOOT; and Defendant UPS's Corrected Motion to Dismiss (ECF No. 14) is GRANTED IN PART and DENIED IN PART. Specifically, UPS's Motion to Dismiss is GRANTED as to Counts I-VI, and DENIED as to Count VII.

A separate Order follows.

Dated:      June 30, 2015                    /s/_____

Richard D. Bennett
United States District Judge