IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

KHALILAH JOHNSON,            *

     Plaintiff,               *

        v.                  *         Civil Action No. RDB-14-4003

UNITED PARCEL SERVICE, INC.,    *

     Defendant.             *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Khalilah Johnson ("Johnson" or "Plaintiff") brings this action against Defendant United Parcel Service, Inc. ("UPS"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-696 ("FEPA"). Plaintiff claims that her employer, UPS, retaliated against her after she sought an accommodation for her religious beliefs.

Plaintiff originally asserted Title VII and FEPA violations, as well as various state law claims sounding in contract, against UPS, the International Brotherhood of Teamsters ("International Union"), and Teamsters Local Union No. 355 ("Local 355"). *See generally* Amended Compl., ECF No. 3. On June 30, 2015, this Court issued a Memorandum Opinion (ECF No. 30) and Order (ECF No. 31) granting the International Union's and Local 355's respective Motions to Dismiss (ECF Nos. 8 & 10), and granting in part and denying in part

UPS's Corrected Motion to Dismiss (ECF No. 14). Specifically, this Court dismissed Counts I-VI, but denied UPS's Motion only as to the religious accommodation retaliation alleged in Count VII. *See generally* Mem. Op. As this Court explained, the alleged retaliation "took the form of assignment to less desirable and more burdensome routes" after Johnson's May 2013 accommodation request. *Id.* at 22.

After a lengthy period of discovery, Defendant UPS filed the pending Motion for Summary Judgment (ECF No. 41). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, Defendant UPS's Motion for Summary Judgment (ECF No. 41) is GRANTED. UPS is entitled to judgment as a matter of law on the final remaining claim, Count VII.

<u>BACKGROUND</u>

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

**A.  UPS Employment**

In 2008, Defendant UPS hired Plaintiff Khalilah Johnson as a "part-time inside unloader" or "package handler" at the UPS facility located on Vero Road in Baltimore, Maryland (the "Baltimore building"). Khalilah Johnson Dep. 73:12-17; 74:4-11, ECF No. 41-3. Upon her employment at UPS, Plaintiff joined Local 355, the Baltimore chapter of the International Union. *Id.* 74:12-20; *see also* Amended Compl. ¶¶ 9, 16. As with all members of

2

Local 355, a collective bargaining agreement ("CBA") between UPS and Local 355 established all terms and conditions of her employment. Johnson Dep. 74:12-75:4.

As a package handler, Johnson was tasked with "sorting, loading and unloading packages onto and off of UPS vehicles." Kevin Garvey Decl. ¶ 6, ECF No. 41-4;[1] *accord* Johnson Dep. 73:23-24. On February 14, 2009, Johnson began to take on some driving work in addition to her duties as a package handler. Johnson Dep. 78:13-79:4. In June 2009, she officially became a "regular temporary package driver" ("Reg-Temp driver"). *Id.* 79:5-7. As a Reg-Temp driver, Johnson generally acted as a substitute for regular drivers or provided extra help delivering packages when needed. Garvey Decl. ¶ 5. A Reg-Temp driver is not a full-time position, as it exists only in the months of June through December. Johnson Dep. 79:8-19. Moreover, the governing collective bargaining agreement does not confer full-time seniority to Reg-Temp drivers. *Id.* 80:6-9.

Johnson continued in this position until May 2012, when she became a full-time driver. *Id.* 80:12-14. She was assigned to the Harbor Center, one of several UPS delivery centers within the Baltimore building. *See, e.g., id.* 74:4-11. The Harbor Center has approximately sixty to seventy full-time drivers, who service sixty-five to seventy set delivery routes. *Id.* 85:2-4; Thomas Reinhardt Decl. ¶ 2, ECF No. 41-5.[2] Routes were assigned via a bidding process wherein each year, drivers bid on specific routes that were awarded based on seniority. Johnson Dep. 81:18-82:5. Drivers who did not receive fixed routes acted as

---

[1] Kevin Garvey is an Area Human Resources Manager for UPS's Chesapeake District, which encompasses the Baltimore building. Johnson Dep. 74:4-7.
[2] Thomas Reinhardt is a "Full-Time On Road Supervisor" at the Harbor Center. Reinhardt Decl. ¶ 2.

"cover" drivers for drivers with fixed routes who were absent from work. *Id.* 80:15-91:9; Charles Kurtz Decl. ¶ 4, ECF No. 41-6;[3] *accord* Tony Freeman Decl. ¶ 4, ECF No. 41-7.[4] As such, the assignments will vary according to which drivers are absent. Kurtz Decl. ¶ 4; Freeman Decl. ¶ 4. Under this system, Plaintiff worked as a cover driver from May 2012 until December 2014. Johnson Dep. 80:15-18; 82:6-12. In January 2015, she had accrued sufficient seniority to win a bid for a fixed route—Route 52C. *Id.* 82:12-15.

Cover driver routes are assigned by "Full-Time On Road Supervisors" on the basis of need—On Road Supervisors determine which routes are missing their regular drivers and then assign cover drivers to those particular routes. *See, e.g.,* Kurtz Decl. ¶ 3. In 2013, On Road Supervisor Charles Kurtz directed the assignment of cover drivers for the Harbor Center. *Id.* ¶¶ 2, 5. When a regular driver is on a previously-scheduled vacation, then an On Road Supervisor assigns a cover driver prior to the regular driver's absence. *Id.* ¶ 5. If, however, the On Road Supervisor does not have prior notice of the regular driver's absence, then the assignment is made the morning of the day in question. *Id.* Cover drivers are responsible for checking the assignment list posted each day. Johnson Dep. 91:11-19.

Package loads for each UPS truck are set by the "Full-Time Package Dispatch Supervisor" using forecasting data based on historical and current trends. David Kulp Decl. ¶¶ 3-4, ECF No. 41-9;[5] *accord* John Oxendine Decl. ¶¶ 3-4, ECF No. 41-10.[6] In 2013, David

---

[3] From 2012 to April 2015, Charles Kurtz was a "Full-Time On Road Supervisor" at the Harbor Center. Kurtz Decl. ¶ 2. He is currently employed as a "Comprehensive Health and Safety Process Supervisor." *Id.*
[4] Tony Freeman is a "Full-Time On Road Supervisor" at the Harbor Center. Freeman Decl. ¶ 2.
[5] David Kulp was the Full-Time Package Dispatch Supervisor for the Harbor Center in 2013. Kulp Decl. ¶ 2.
[6] John Oxendine became the Full-Time Package Dispatch Supervisory for the Harbor Center in March 2015

Kulp acted as the Package Dispatch Supervisor, while John Oxendine has held that title from March 2015 onward.[7] Kulp Decl. ¶ 2; Oxendine Decl. ¶ 2. Ideally, each package load would necessitate a "plan time"[8] of 8-9.5 hours, although a driver's plan time on a particular day could fall outside of this range. Kulp Decl. ¶¶ 5, 8, 10.  A driver who exceeded the plan time for his route was "over allowed," however the driver still received compensation for all time worked on that particular day. *Id.* ¶ 5; Johnson Dep. 114:23-115:8. This payment includes overtime pay, which is triggered after eight hours of work. Kulp Decl. ¶ 5.

To optimize the efficiency of deliveries, the Package Dispatch Supervisor may alter the number of stops during the day. Kulp Decl. ¶ 9; *accord* Oxendine Decl. ¶ 9. In that event, an additional driver may be sent to assist the assigned driver by taking a portion of the remaining packages. Kulp Decl. ¶ 9; *accord* Oxendine Decl. ¶ 9. Package Dispatch Supervisors determined only the package load for a particular route, and not the driver assignments. Kulp Decl. ¶ 11. After Package Dispatch Supervisor determined the appropriate package loads, a "preloader" would put the respective packages on the truck assigned to that route. Robert Hatcher Decl. ¶¶ 3, 5, ECF No. 41-8.[9]

### B.  Religious Accommodation and Alleged Retaliation

---

and remains in that position today. Oxendine Decl. ¶ 2.

[7] This Court notes that Johnson does not claim that the Package Dispatch Supervisors retaliated against her due to her request for a religious accommodation. Johnson Dep. 153:22-154:4.

[8] The "plan time" is the amount of time a driver should need to complete his assigned deliveries, measured from the moment the driver leaves the facility to the moment he returns. Kulp Decl. ¶ 6.

[9] Robert Hatcher, while currently a Hub Manager at the Baltimore building, previously acted as the Preload Manager for the same facility during the time period relevant to this action. Hatcher Decl. ¶ 2.

Johnson, a Seventh Day Adventist, observes a Sabbath that begins at sundown on Friday. Johnson Dep. 349:20-25; *see also* Amended Compl. ¶ 105. In May 2013, she and her husband, Michael Johnson, who is employed as a full-time driver assigned to the Harbor Center,[10] submitted formal accommodation requests in which they asked that they not be required to work past sundown on Fridays. Garvey Decl. ¶ 4; *see also* Amended Compl. ¶ 105. UPS granted the accommodation request. Johnson Dep. 165:8-166:10. Under the accommodation, Plaintiff (and her husband) do not work on Fridays between October 1 and April 1, even after they have exhausted vacation days and paid time off. *Id.*; Garvey Decl. ¶ 4. From April 2 through September 30, Plaintiff works on Fridays, but her assignments are adjusted to allow her to end working before sundown. Garvey Decl. ¶ 4; Johnson Dep. 165:8-166:10. Plaintiff claims that it was "[p]ossibl[e]" that she had worked past sundown on a Friday, but she "[could] not recall" if she had actually done so and "believe[s] [she] did not." Johnson Dep. 352:6-12.

As set forth *supra*, Johnson alleges that UPS began to retaliate against her, but not her husband, for their religious accommodation request.[11] This retaliation consisted of assignments to the "worst" routes and the overloading of packages on her truck. Although Johnson claims that this treatment also occurred prior to the May 2013 accommodation request, *see, e.g.* Johnson Dep. 254:17-22, the present action concerns her assignments on five separate occasions only: June 26, 2013; August 5, 2013; September 30, 2013; October 23,

---

[10] Johnson Dep. 355:20-356:1.
[11] She does not contend that her husband, Michael Johnson, has suffered the retaliation at issue in this action. Johnson Dep. 355:1-13.

2013; and December 2, 2013.[12] Johnson Dep. 292:8-22; Def.'s Mot. for Summ. J. Ex. 14, 4, ECF No. 41-16 (UPS Interrogatory & Plaintiff's Supplemental Answer). On those days, she does not contend that her assignment to the route itself was retaliatory. *See, e.g.*, Johnson Dep. 291:20-292:7. Rather, she claims that her assigned route was retaliatory because it was overloaded with packages. *Id.* 292:2-7. Yet, she also admits that Kurtz or another supervisor consistently sent other drivers to help her deliver packages so that she could finish work before sundown. *See, e.g.*, 289:9-290:8; 308:7-17.

## C.  The Present Action

Johnson filed three charges with the Equal Employment Opportunity Commission ("EEOC") on separate dates, asserting gender and/or race discrimination and religious retaliation claims, respectively. Def.'s Mot. for Summ. J. Exs. 9, 10, 16, ECF Nos. 41-11, 41-12, & 41-18; *see also* Mem. Op. at 3-4. Only the last charge, dated February 7, 2014, included a claim of retaliation on the basis of religion. Def.'s Mot. for Summ. J. Ex. 16. The EEOC issued a "Right to Sue" Notice for this charge on June 25, 2014. Def.'s Mot. for Summ. J. Ex. 17, ECF No. 41-19.

Plaintiff filed the subject action in the Circuit Court for Baltimore City. Mem. Op. at 4; Compl., ECF No. 2. After she filed an Amended Complaint, UPS and its former co-Defendants timely removed the case to this Court pursuant to 28 U.S.C. § 1331. Mem. Op.

---

[12] Plaintiff also includes several dates in 2015: May 14, 15, and 21, as well as June 1 and July 30. Def.'s Mot. for Summ. J. Ex. 14 at 4. As will be discussed *infra*, this Court has no jurisdiction over any alleged retaliation occurring in 2015 due to Plaintiff's failure to exhaust the requisite administrative remedies. *Johnson v. State of Maryland*, 940 F. Supp. 873, 875 (D. Md. 1996) (citing 42 U.S.C. § 2000e-5(e)-(f); *Michel v. S.C. State Emp't Serv.*, 377 F.2d 239, 242 (4th Cir. 1976); *Maxey v. M.H.M., Inc.*, 828 F. Supp. 376, 377 (D. Md. 1993)).

at 4; Notice of Removal, ECF No. 1. The sole remaining issue is Plaintiff's claim that UPS retaliated against her following her May 2013 religious accommodation request by assigning her to "less desirable and more burdensome routes." Mem. Op. at 22.

<u>STANDARD OF REVIEW</u>

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. V. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary

8

judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, --- U.S. ----, 134 S. Ct. 1861, 1866-68 (2014) (per curiam).

However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50.  On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  As this Court has previously explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

<u>ANALYSIS</u>

As noted *supra*, Plaintiff's sole remaining claim is her assertion that UPS retaliated against her by assigning her to less desirable and more arduous delivery routes on five separate occasions in 2013. To state a claim of retaliation under Title VII,[13] a plaintiff must

---

[13] Title VII and FEPA are analyzed as one because "[t]he Maryland Court of Appeals has deemed FEPA to be the  state law analogue of Title VII, and has noted that Maryland courts 'traditionally seek guidance from federal cases in interpreting Maryland's [FEPA]." *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC*, No. JKB-10-276, 2011 WL 4549177, at *4 n.3 (D. Md. Sept. 28, 2011) (internal citation omitted). However, Maryland does require that any charge of discrimination be filed within six months of the alleged act. Md. Code Ann., State Gov't § 20-1004(c)(1). In this case, the only relevant EEOC charge was filed on February 7, 2013, thus any discriminatory conduct pre-dating August 7, 2013 is untimely. As such, Plaintiff's workload

exhaust administrative remedies. *Johnson*, 940 F. Supp. at 875 (internal citations omitted). In this case, any alleged retaliation post-dating the February 7, 2014 EEOC charge will not be considered due to Plaintiff's failure to satisfy this prerequisite.[14]

When, as in this case, the plaintiff relies upon circumstantial evidence of misconduct, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. A plaintiff first must establish a *prima facie* case of retaliation by showing that: "(1) she engaged in protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)). After the employee establishes a *prima facie* case, the burden shifts to the employer to rebut the inference of retaliation. *McDonnell Douglas*, 411 U.S. at 802. Although the employer's burden is not onerous, it must articulate "some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* Once the employer produces a legitimate, nondiscriminatory reason, the burden returns to the plaintiff to prove that the defendant's stated reason is pretextual. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). To that end, the employee must either show that the employer's explanation is "'unworthy of credence' or . . . offer[] other forms of circumstantial evidence sufficiently

---

assignments on June 26, 2013; August 5, 2013; and August 6, 2013 will be considered only under Title VII, and not the FEPA.

[14] To the extent Plaintiff argues for the inclusion of the 2015 alleged retaliation under the "continuing violation" theory, it is well-established that this theory does not apply to discrete acts of discrimination or retaliation. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-14 (2002). As such, a complaining employee "must file a charge of discrimination within the appropriate limitations period as to each discrete act of discrimination that occurred." *Williams v. Giant Food Inc.*, 370 F.3d 423, 429 (4th Cir. 2004) (citing *Morgan*, 536 U.S. at 113).

probative of" the retaliation. *Mereish v. Walker*, 359 F.3d 330, 332 (4th Cir. 2004); *see also McGrath-Malott v. Maryland*, 565 F. Supp. 2d 656, 670-71 (D. Md. 2008).

In this case, Plaintiff fails to carry her initial burden of establishing a *prima facie* case of retaliation. The first element is not in dispute—Johnson engaged in protected activity by requesting an accommodation for her religious beliefs in May 2013. Her claim stumbles, however, at the second and third elements.

With respect to the second element, the record reveals that the alleged retaliatory acts simply are not adverse employment actions within the ambit of Title VII. The United States Supreme Court in *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), explained that an action is adverse if "a reasonable employee would have found the challenged action materially adverse." In other words, the action "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Ronchon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (quoting *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005))). The Supreme Court emphasized that the requirement of "*material* adversity" recognizes that Title VII "does not set forth 'a general civility code for the American workplace.'" *Burlington Northern*, 548 U.S. at 68 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)) (emphasis in original). Any "petty slights or minor annoyances that often take place at work" do not amount to adverse employment actions. *Burlington Northern*, 548 U.S. at 68.

Here, Johnson clearly admits in her deposition that her complaint is with the *amount* of work assigned, and not that the routes themselves were inherently less desirable.

Specifically, on five occasions from June 2013 to December 2013, she claims that UPS assigned her an unreasonable workload. Five separate occasions over six months, however, hardly amounts to an employment action that could "have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern*, 548 U.S. at 68 (quoting *Ronchon*, 438 F.3d at 1219). Although Plaintiff conclusorily asserts that such an assignment was "uncommon," Khalilah Johnson Decl. ¶ 6, ECF No. 49-8, the record clearly shows that other drivers regularly performed *more* work than that assigned to her. *See, e.g.*, Kurtz Decl. Exs. 1, 2, 3, ECF No. 41-6 (Routes 62B, 62D, and 67C Data). On the five separate days at issue, UPS "management" consistently sent extra drivers to assist Johnson. *See, e.g.*, Johnson Dep. 289:9-290:8; 308:7-17. Indeed, when she did work longer than eight hours, she received overtime compensation and thus benefitted financially.

In response, Plaintiff simply states that she "has been tasked with many adverse changes to her route assignments." Pl.'s Resp. in Opp'n, 16, ECF No. 49. She proffers no facts indicating what those alleged changes were, when they happened, or even how they were adverse. She points to the entirety of her declaration as supporting her conclusory statements, but does not identify any facts specific to her retaliation claim. *See, e.g.*, *id.* at 19. The declaration essentially repeats her claims of discriminatory conduct that this Court clearly dismissed in its Memorandum Opinion of June 30, 2015. As this Court has repeatedly explained, it is not the duty of this Court to "independently comb the record to look for" facts supporting a plaintiff's opposition to summary judgment. *Malina v. Baltimore Gas & Elec. Co.*, 18 F. Supp. 2d 596, 604 (D. Md. 1998). That duty lies squarely with the plaintiff. *Id.*

12

In this case, Johnson has failed to raise any genuine issue of material fact that she suffered an adverse employment action.

Even if her workload assignments on the five occasions at issue were deemed to be adverse employment actions, her attempts to show a causal relationship between those actions and her religious accommodation request do not succeed. A plaintiff at the summary judgment stage is not required to conclusively establish the causal connection required to ultimately prevail. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Yet, the plaintiff also may not rely on conclusory allegations devoid of any factual support. As the United States Court of Appeals for the Fourth Circuit has explained, "a causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). The "temporal proximity," however, must be "very close" to satisfy this element. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Temporal proximity is just one means by which to show causation. *See Westmoreland v. Prince George's Cnty., Md.*, 876 F. Supp. 2d 594, 613 (D. Md. July 26, 2012) ("[P]laintiffs may state a prima facie case of causation by relying on evidence other than, **or in addition to**, temporal proximity where such evidence is probative of causation.") (emphasis in original, citation and internal quotation marks omitted).

Once again, Plaintiff offers only conclusory allegations to show the existence of a causal connection. She asserts that she has "proffer[ed] evidence of management behavior directed toward her because of her accommodation request," but cites to no facts in the

record to support this claim. Pl.'s Resp. in Opp'n at 17. She also claims that the declaration of her husband, Michael Johnson, "corroborates her accounts with his own observations." *Id.* At most, Michael Johnson states that he believes his wife's truck was overloaded. Michael Johnson Decl. ¶ 8, ECF No. 49-6. Beyond his own speculation, he does not connect the overloading to her religious accommodation request. Any statements regarding other perceived retaliatory conduct is not relevant to the subject action, which concerns only Plaintiff's assignments on the five dates in question.

Finally, Johnson's reliance on temporal proximity is misplaced. She argues that the case law of this Circuit clearly states that a four-month gap is sufficient to show a causal relationship between the protected activity and the adverse action. Pl.'s Resp. in Opp'n at 17-18 (discussing *Williams v. Cerberonics*, 871 F.2d 452, 457 (4th Cir. 1989)). Yet, this assertion is belied by more recent case law, in which the Supreme Court and the Fourth Circuit have repeatedly emphasized, temporal proximity must be "very close" to show a causal connection. *Clark County*, 532 U.S. at 273; *Price*, 380 F.3d at 213. On this reasoning, the Fourth Circuit has rejected gaps of as little as two months. *Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005); *see also Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (rejecting a gap of three-four months).

Plaintiff submitted her religious accommodation request on May 1, 2013. Pl.'s Resp. in Opp'n Ex. B, 6, ECF No. 49-3. The first alleged act of retaliation, however, did not occur until June 26, 2013, nearly two months after her request. The remaining acts of retaliation then spanned the next five months. This lengthy gap, far from indicating a causal

connection, instead "negates the inference of discrimination." Price, 380 F.3d at 213. Further negating any inference of discrimination is Plaintiff's admission that she had complained of a heavy workload on many occasions preceding her request for a religious accommodation. *See, e.g.*, Johnson Dep. Ex. 1, ECF No. 41-14 (March 28, 2013 grievance alleging overloading).

In sum, Johnson cannot state a *prima facie* case for retaliation under either Title VII or the FEPA. The five occasions on which she allegedly was assigned an arduous workload are not adverse employment actions within the ambit of either statute. Even if such occasions were adverse employment actions, she shows no causal connection between the alleged discriminatory conduct and her religious accommodation request. Quite simply, Plaintiff has failed to raise any genuine issue of material fact that UPS retaliated against her on the basis of her religion.

<u>CONCLUSION</u>

For the reasons stated above, Defendant UPS's Motion for Summary Judgment (ECF No. 41) is GRANTED. UPS is entitled to judgment as a matter of law on the final remaining claim, Count VII.

A separate Order follows.

Dated: August 11, 2016                    /s/_____
                                          Richard D. Bennett
                                          United States District Judge